IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-148-RJ

MICHAEL RAY MCGLOTHLEN,          )
                                 )
            Plaintiff/Claimant,  )
                                 )
      v.                         )          **ORDER**
                                 )
MICHAEL J. ASTRUE, Commissioner of )
Social Security,                 )
                                 )
            Defendant.           )

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-25, DE-27] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael Ray McGlothlen ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 27 April 2009, alleging disability beginning 30 October 2007. (R. 10). His claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 26 January 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 19-38). On 3 February 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-18). On 19 May 2011, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the

2

extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) wrongful denial of the request by Claimant's counsel for a continuance to allow the submission of additional medical records; (2) improper credibility assessment; and (3) improper evaluation of the treating physician's opinion. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3-4, 7.[1]

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

---

[1]    While Claimant identifies four assignments of error, the court considers two of the issues in its credibility discussion below. *See* Pl.'s Mem. at 3.

3

disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the following severe impairments: sleep apnea, degenerative disc disease of the cervical spine ("DDD"), obesity, chronic fatigue syndrome, right carpal tunnel syndrome and fibromyalgia. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living and in social functioning and moderate difficulties in concentration, persistence and pace with no episodes of decompensation. (R. 13). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform medium work[2] in a low-stress environment. (R. 14). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 14).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 17). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 57 years old and unemployed.

---

[2]    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, he can also do sedentary and light work.   20 C.F.R. § 404.1567(c).

(R. 22-23). Claimant has an associates degree. (R. 22). Claimant testified the he has been a commercial photographer most of his life. (R. 22).

Claimant testified that he is unable to work due to migraine headaches, sleep apnea, fibromyalgia, celiac disease, depression and symptoms associated therewith, including pain, fatigue and vertigo. (R. 22, 27-28, 33). Claimant testified on a pain scale from 1 to 10, with 10 signifying great pain, his pain is a seven and a half with medication. (R. 26). Claimant uses a C-PAP machine at nights. (R. 14). Claimant experiences up to four migraines a week. (R. 28). Claimant testified to having "constant ringing" in his ears that worsens during migraines. (R. 28). Claimant has been placed on medications and dietary restrictions that have worked "to a certain degree." (R. 29). Claimant has undergone deep tissue therapy without any success. (R. 29). Claimant testified that he feels "pretty worthless," experiences vertigo "quite often" and has fallen "[t]wo or three times, lately." (R. 32-33). Claimant testified that he can no longer shower daily because the water "feels like it's beating [him] to death" due to "raw nerve endings" on his back. (R. 34). Claimant testified to crying "all the time." (R. 34).

Claimant can sit for up to one and a half hours and stand for up to 30 minutes (R. 24-25). Claimant can walk approximately 1/8th of a mile and must walk slowly because he is "not real steady" on his feet. (R. 25). Claimant can lift up to twelve pounds. (R. 25). Claimant is able to drive but does so only when "it's absolutely necessary" due to light and sound sensitivity. (R. 26). On an average day, Claimant eats breakfast prepared by his wife, cleans dishes, uses the computer to maintain web sites displaying his artwork, tries to prepare simple meals, walk his dogs and takes a nap in the afternoon. (R. 30). Claimant testified that he attends church on occasion. (R. 31).

5

### III. Vocational Expert's Testimony at the Administrative Hearing

Mrs. Vargas testified as a VE at the administrative hearing. (R. 35-38). After the VE's testimony regarding Claimant's past work experience, the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant. (R. 35-36). The ALJ then asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform medium work in a low-stress job, "defined as having only occasional decision making required and only occasional changes in the work setting." (R. 36). The VE testified in the negative but stated the hypothetical individual could perform the following representative positions: (1) industrial cleaner (DOT #381.687-018); (2) dining room attendant (DOT #311.677-018); and (3) factory helper (DOT #529.686-034). (R. 36-37). When asked by Claimant's counsel whether any jobs would be available if the hypothetical individual was limited to working two hours per day, the VE testified in the negative. (R. 37).

## DISCUSSION

### I. Claimant has failed to prove that the ALJ's denial of the request for a continuance by Claimant's counsel unfairly prejudiced Claimant's claim for disability.

Claimant contends the ALJ abused his discretion by denying the request for a continuance by Claimant's counsel in order to allow full development of the record. Pl.'s Mem. at 3. On 21 January 2010, Claimant's counsel contacted the ALJ, seeking a "short continuance" of the administrative hearing scheduled for 26 January 2010, advising the ALJ "of additional medical records and information, specifically from the office of Dr. Patel, a physician who had treated claimant for his medical conditions." *Id.* Claimant contends the ALJ denied the request for a continuance and

6

never afforded [Claimant] or his counsel the ability to provide any additional medical evidence. [Claimant] was prejudiced by the denial of his request and by the failure of the ALJ to allow sufficient time for his representative to obtain and supply medical evidence to be considered in support of his claim.

*Id.*

The ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). This duty includes developing the claimant's "complete medical history." 20 C.F.R. § 404.1512(d). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The decision of an ALJ will not be overturned for failure to fully and fairly develop the record unless "such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980) (citations omitted). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted); *see also King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (explaining prejudice results where the ALJ's decision "might reasonably have been different had that evidence been before him when his decision was rendered").

Here, Claimant points to no evidentiary gaps that resulted in unfairness or prejudice to Claimant. Indeed, Claimant makes no reference to the existence of additional evidence that might have altered the result of the ALJ's decision. *See Smith v. Barnhart*, 395 F. Supp. 2d 298, 305 (E.D.N.C. 2005) (the claimant proffered to the court an actual report from the doctor in question);

7

*cf. Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (explaining "[a]lthough the ALJ has a duty to develop the record despite the claimant's representation by counsel, the fact that [claimant]'s counsel did not obtain (or, so far as we know, try to obtain) the items [claimant] now complains of suggests that these alleged treatments have only minor importance"). Following the testimony of the VE, the ALJ specifically questioned Claimant's counsel whether there was "[a]nything else," to which counsel responded, "No, your honor." (R. 38). The ALJ then advised "unless there's something else that I hear, I'm going to close the record." *Id.* During the administrative hearing, Claimant's counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

While "the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's substitute counsel." *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994); *see also Craft v. Apfel*, No. 97-2551, 164 F.3d 624 (table), 1998 U.S. App. LEXIS 24674, at *9, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998) ("While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'go to inordinate lengths to develop a claimant's case.'") (quoting *Thomas v. Califano*, 556 F.2d 616, 618 (1st Cir. 1977)). To the contrary, an ALJ has the right to presume that claimant's counsel presented claimant's strongest case for benefits. *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) *(citing Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). Ultimately,

8

"[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d). Claimant has not provided a factual foundation upon which the court can perceive a gap in the evidentiary record that is prejudicial to Claimant. Accordingly, Claimant's argument is without merit.

## II.     The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating neurologist, Richard Serano, M.D., of Highland Neurology Center. Pl.'s Mem. at 7.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment

9

relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[3] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5; SSR 96-6p, 1996 SSR LEXIS 3, at *2, 1996 WL 374180, at *1.

The medical opinion at issue appeared in a two-page questionnaire completed by Dr. Serano on 24 October 2009 regarding Claimant's physical abilities and limitations due to chronic fatigue syndrome, celiac disease, fibromyalgia, arthralgias, fatigue, headaches and depression. (R. 308-09). With respect to limitations imposed by Claimant's mental and physical impairments, Dr. Serano opined that Claimant is capable of "engag[ing] in only limited stress situations and . . . limited interpersonal relations" and is "capable of clerical/administrative (sedentary) activity (60%-70%)." (R. 309). Dr. Serano indicated Claimant is capable of sitting for thirty consecutive minutes for two hours total, walking and standing fifteen consecutive minutes per hour, lifting no more than fifteen pounds and working no more than two hours per day. *Id.* The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Serano between November 2006 and January 2010 via multiple references to his treatment notes. (R. 15, 322, 331, 342, 345, 338-47, 353-58, 362-66). However, the ALJ accorded "little weight" to Dr. Serano's

---

[3]     The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(e).

.

opinion, explaining that

> [a]lthough this opinion is from a treating source, it is not consistent with the evidence of record. The opinion is not accompanied by any explanation as to how the claimant's impairments cause these limitations, nor what objective or clinical findings support these limitations. The undersigned notes that the claimant's own recitation of his daily activities contradicts this assessment, as the claimant mostly spends his time sitting at his computer, for periods far in excess of two hours per day. Furthermore, the claimant admitted to his providers that he was doing physical work activity over the summer and fall of 2009.

(R. 16). The ALJ explained further, however, that he "does not disregard the opinion in its entirety however, and has incorporated some restrictions to low stress work, a limitation endorsed by Dr. Serrano [sic]." (R. 16).

The ALJ's finding is supported by substantial evidence. Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(d)(2). However, form reports like the questionnaire completed by Dr. Serano are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue*, 2010 U.S. Dist. LEXIS 77379, at *16, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added). Dr. Serano attached to the form opinion his treatment records dated 15 November 2006 to 4 January 2010 (R. 338-365) and objective findings, including a 5 December 2006 MRI of Claimant's head and cervical spine and a 6 November 2007 nerve conduction study, much of which was discussed by the ALJ. (R. 310-337). In particular, the ALJ noted the following: (1) the MRI showed mild cervical spondylosis and minimal disc degeneration; (2) the nerve conduction study revealed "very mild" right carpal syndrome; (3) Claimant's diagnosis of fibromyalgia; (4) the resolution of Claimant's sleep apnea by Claimant's use

11

of a CPAP machine; and (5) Claimant's treatment for headaches. (R. 15). However, the ALJ found that this evidence does not support the physical limitations noted by Dr. Serano. For example, regarding Claimant's fibromyalgia, the ALJ noted that Dr. Serano's progress records reveal a lack of consistent findings of tender trigger points on examination. *Id.* In fact, as the ALJ noted, Claimant's treatment with Dr. Serano is generally limited to complaints of headaches "about once a week or less" but no reports of extreme pain. *Id.* The ALJ noted further that Claimant's medication is limited to "various vitamin supplements, fioricet for headaches, and NSAIDs;" however, Claimant takes no muscle relaxers or narcotic pain medications. *Id.*

Neither Dr. Serano's treatment records nor the MRI and nerve conduction study findings support the functional limitations suggested by Dr. Serano. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). In his brief, Claimant does not direct the court to any treatment records by Dr. Serano which support Dr. Serano's medical opinion and the court can find none. Finally, as the ALJ noted, Claimant's statements to his treating nurse in June 2009 and October 2009 that he was "doing more physical work" and "has done more physical work this week, tries to keep to 3-4 hours [of] work/day," respectively, contradict Dr. Serano's opinion that Claimant is incapable of working more than two hours a day. (R. 15-16, 342, 345).

As for the ALJ's reliance on Claimant's computer usage "for periods far in excess of two hours per day" as evidence contradicting Dr. Serano's medical opinion – a finding of fact not contested by Claimant – the court notes this statement is unsupported by Claimant's testimony. In

12

discussing his computer usage, Claimant testified that on a typical day, he "sometimes will go over to the computer [as he] maintain[s] a couple of websites." (R. 16). Similarly, while Claimant's wife commented on Claimant's computer usage in a third party function report, she did not indicate with specificity how often Claimant uses the computer, noting only that Claimant is "sometimes on [the] computer." (R. 160). While the court does not find the ALJ's statement as to Claimant's computer usage accurate, it is harmless error. As the ALJ also noted, during the administrative hearing, Claimant testified that he can normally sit "around an hour, hour and a half."[4] (R. 14, 24). Claimant's testimony contradicts Dr. Serano's opinion that Claimant is incapable of sitting more than half an hour at a time. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)(explaining the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)). The absence of a sufficient rationale for the opinion of Dr. Serano and the inconsistency between his opinion and other medical evidence in the record, including his own treatment records, reasonably downgraded the true evidentiary value of her opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Serano's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight

---

[4]     In summarizing Claimant's testimony, the ALJ stated Claimant testified that he can "sit for one hour at a time." (R. 14).

13

to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Serano's opinion.

## III. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ improperly evaluated Claimant's credibility. Pl.'s Mem. at 3-4. Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id*. at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id*.; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id*. at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id*.; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See id*. at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value;

14

rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Here, the ALJ considered Claimant's numerous subjective complaints associated with his medical impairments, including fatigue, pain, panic attacks and headaches. (R. 14-15). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ discussed the objective evidence, including the 2006 MRI which revealed only mild cervical spondylosis and minimal disc degeneration, the 2007 nerve conduction study which showed "very mild" right carpal tunnel syndrome, and the lack of consistent findings of tender trigger points on exam. (R. 15). The ALJ discussed also Claimant's comments to a treating source in June 2009 and October 2009 that he was "doing more physical work" and had "done more physical work this week, tries to keep to 3-4 hours [of] work/day," respectively. (R. 15, 342, 345). The ALJ noted also that while Claimant takes various vitamin supplements, fiorcet for headaches and NSAIDs and receives deep tissue therapy, Claimant does not take any muscle relaxers or narcotic pain medications and "has not pursued acupuncture or other, more aggressive modalities." (R. 15, 29, 186). Finally, the ALJ discussed Claimant's daily activities which include washing dishes, walking his dogs, attending church, working on his computer and preparing meals.

Claimant contends the ALJ failed to perform a proper credibility assessment of Claimant's pain, headaches, activities of daily living and ability to perform work related functions. Upon review of Claimant's argument, it is evident that Claimant believes this case is governed by *Hines v.*

*Barnhart*, 453 F.3d 559 (4th Cir. 2006). *See* Pl.'s Mem. at 4-5 (implying Claimant was permitted to rely upon his testimony regarding his pain and fatigue at the second step of the credibility analysis to prove functional limitations and citing *Hines*). Though the court in *Hines* found that the claimant was entitled to rely exclusively on subjective evidence, the court noted:

> While objective evidence is not mandatory at the second step of the test, [t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, *they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment*, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Hines*, 453 F.3d at 565 n.3 (emphasis added) (quoting *Craig*, 76 F.3d at 595); *see also Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 299 (4th Cir. 2011) (rejecting claimant's argument that a finding at the step one analysis of *Craig* affords any presumption of credibility). Therefore, claimants are not automatically entitled to rely exclusively on subjective evidence to show that they are unable to perform work eight hours per day, five days per week.  While Claimant provides no further discussion in support of his argument that *Hines* is applicable to this case, the court observes Claimant, like the claimant in *Hines*, suffers in part from an illness, and in particular fibromyalgia, where objective tests are of little relevance in determining its existence or severity. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (stating "of greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective"); *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (explaining fibromyalgia patients generally "manifest normal muscle strength and neurological reactions and have a full range of motion"). Nonetheless, "while [courts]

16

recognize that fibromyalgia is 'a disease that eludes [objective] measurement,' mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 Fed. Appx. 20, 22 (2d Cir. May 28, 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).

Here, in discussing Claimant's fibromyalgia, the ALJ noted that "there are no consistent findings of trigger points on exam. Indeed, there is little in the way of physical exam findings to corroborate the claimant's complaints of pain" – a finding not contested by Claimant. (R. 15); *see Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (explaining "[d]octors diagnose fibromyalgia based on tenderness of at least eleven of eighteen standard trigger points on the body") (citing *Sarchet*, 78 F.3d at 306). Claimant argues only that he experiences pain and fatigue. Claimant does not discuss, however, how such pain causes a functional loss greater than that found by the ALJ. As the ALJ noted, the record demonstrates that Claimant's allegations of pain and fatigue "are adequately controlled by his use of routine medications." (R. 15).

Claimant has failed to carry his burden in showing an inability to perform substantial gainful activity as a result of fibromyalgia. *See* 20 C.F.R. § 1512(a) ("[The claimant] must furnish medical and other evidence that we can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis."); *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010) ("[W]hen an applicant for social security benefits is represented by counsel the [ALJ] is entitled to assume that the applicant is making [her] strongest case for benefits.") (quoting *Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997)). The record is void of explanations as to how fibromyalgia prevents Claimant from working. Notably, Claimant's own version of the relevant facts includes minimal discussion of his treatment for fibromyalgia, stating

17

only that "blood work and evaluations performed by Dr. Serano clearly establish . . . chronic pain in [Claimant's] muscles and trigger points . . . ." Pl.'s Mem. at 5. Testimony elicited by Claimant's counsel as to the functional limitations experienced as a result of fibromyalgia is limited to Claimant's statement that he experiences fatigue and pain. *See* (R. 27-28). Furthermore, while the record contains a form opinion by Dr. Serano listing functional limitations as a result of numerous impairments, including fibromyalgia, as explained above, Dr. Seraon's progress notes are devoid of any discussion with respect to Claimant's functional limitations and do not provide a basis for the extensive limitations in the form opinion. Accordingly, the ALJ was permitted to evaluate the subjective allegations of pain and fatigue in conjunction with the objective medical evidence and other evidence of record. *See Morris v. Astrue*, No. 7:08CV630, 2010 U.S. Dist. LEXIS 20036, at *9, 2010 WL 838862, at *3 (W.D. Va. Mar. 5, 2010) (noting the ALJ is not required "to defer blindly to [the claimant's] testimony about the level of impairment caused by his pain once [the claimant] has established objective evidence of an underlying medical impairment").

While not raised by Claimant, the court notes that in evaluating the credibility of Claimant's assertions of functional limitations, the ALJ considered the statements of Claimant's wife, Mabel McGlothen. On 22 May 2009, Ms. McGlothen completed a "Function Report-Adult-Third Party" concerning, among other things, how Claimant's impairments affect his daily activities. (R. 16, 160-67); *see* 20 C.F.R. § 404.1513(d)(4) (explaining in determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work). Ms. McGlothen indicated that most days, Claimant "stays inside, sometimes on [the] computer [or] watch[ing] TV, or if he feels really bad he takes meds for pain or migraines that make him sleep." (R. 160). Ms. McGlothen also provided the following information: (1) Claimant can vacuum, wash dishes, and do

18

the laundry but if he attempts any yard work, he "is out of commission for days;" (2) Claimant cannot prepare meals due to chronic fatigue; (3) Claimant does not venture outside because of headaches and fatigue; (4) Claimant attends movies every two weeks, emails daily and goes out to eat once a week; and (5) Claimant "runs out of energy; he can't lift heavy objects []; he can't remember things; his concentration is really bad." (R. 162-64).

The ALJ accorded Ms. McGlothen's statement "no weight," explaining "it is from a source that is expected to be sympathetic to the claimant, not a neutral third party observer. Furthermore, it is based on the claimant's subjective presentation, which is only as credible as the claimant himself . . . [and] the undersigned does not find the claimant credible." (R. 16). The mere fact that Claimant's wife is not a "neutral" party is an insufficient reason to reject her statements. *See Nance v. Astrue*, No. 7:10-CV-218-FL, 2011 U.S. Dist. LEXIS 120890, at *33-*34, 2011 WL 4899754, at *11 (E.D.N.C. Sept. 20, 2011), adopted, 2011 U.S. Dist. LEXIS 118077, 2011 WL 4888868 (E.D.N.C. Oct. 12, 2011) (explaining the SSA "also use[s] evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work", including a claimant's spouse) (quoting 20 C.F.R. §§ 404.1513(d), 416.913(d)); *see also Morgan v. Barnhart*, 142 Fed. Appx. 716, 731 (4th Cir. 2005) (explaining "descriptions of friends and family members who [are] in a position to observe the claimant's symptoms and daily activities [are] routinely accepted as competent evidence") (quoting *Behymer v. Apfel*, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999)) (alterations added). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. *Morgan*, 142 Fed. Appx. at 731. The ALJ's discounting of Ms. McGlothen's statements based on her personal relationship with Claimant does not qualify as a reason germane to her. *See Morgan*, 142 Fed. Appx. at 731 (citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.

19

1996)) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value [–] such lay witnesses will often be family members.").

Nevertheless, the court finds any error committed by the ALJ harmless. As discussed above, the ALJ properly discredited Claimant's testimony – testimony which was substantially similar to that of Ms. McGlothlen – because it is not supported by the medical record. Accordingly, because Ms. McGlothlen's statement regarding Claimant's limitations was similar to Claimant's own testimony, and because the ALJ provided a rationale supported by substantial evidence for discounting Claimant's testimony, the ALJ likewise provided sufficient reasons for rejecting Ms. McGlothlen's statements. *See Pitta v. Astrue*, No. 5:11-CV-356-D, 2012 U.S. Dist. LEXIS 114209, at *12-*13, 2012 WL 3524829, at *4 (E.D.N.C. Aug. 14, 2012) (finding no error in the ALJ's consideration of testimony by two lay witnesses where "[t]he ALJ's decision ma[de] clear that he evaluated [the lay witness] testimony collectively along with [claimant's] testimony and that, as a practical matter, he considered their testimony to be essentially consistent with [claimant's] testimony"); *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th Cir. 2009)(holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness'] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")). As such, there is no reversible error.

The ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir.

20

1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-25] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-27] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 23rd day of August, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge